# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 4:16-CR-00019-01 |
| v. | (Judge Brann) |
| TROY RYEHEE BROWN, | |
| Defendant/Petitioner. | |

## MEMORANDUM OPINION

### JANUARY 25, 2019

**I.  BACKGROUND**

On January 28, 2016, Petitioner Troy Ryehee Brown was indicted in a heroin-distribution conspiracy that ultimately resulted in a sixteen count, second superseding indictment against twenty-seven defendants. Brown was sentenced on June 12, 2017, with the benefit of both Criminal Justice Act counsel and a plea agreement.[1] He plead guilty to and was accordingly sentenced on Count 1 of the indictment, conspiracy to distribute controlled substances, specifically heroin, in violation of 21 U.S.C. § 846.

---

[1]  ECF No. 488.

This Court sentenced Brown to a term of imprisonment of 204 months, six months below the bottom of the advisory guideline range,[2] pursuant to a defense motion for a variance to which the Government objected. In the presentence report,[3] Brown was found to be a 'career offender' under the United States Sentence Guidelines; Brown stipulated as such in his plea agreement.[4]

On June 18, 2018, Brown filed a timely petition for writ of habeas corpus[5], which is the subject of the instant Memorandum Opinion. The petition will be dismissed for the reasons that follow.

## II. DISCUSSION

As an initial matter, I note that Brown is proceeding *pro se* and I am cognizant that "a habeas corpus petition prepared by a prisoner without legal assistance may not be skillfully drawn and should thus be read generously; it is the policy of the courts to give a liberal construction to pro se habeas petitions."[6] Title 28 U.S.C. § 2255 states, in pertinent part:

> (a) A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the

---

[2] The Presentence Report, which I adopted in its entirety, placed Brown at an offense level of 32 with a criminal history category of VI, which resulted in an advisory guideline range of 210 to 262 months.

[3] ECF No. 597 at 13.

[4] ECF No. 488 at 9.

[5] ECF No. 955.

[6] *Workman v. Superintendent Albion SCI*, 908 F.3d 896 (3d Cir. 2018) (Fuentes, J.).

United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

Brown alleges in his petition that counsel was ineffective in representing him. The Sixth Amendment to the United States Constitution provides, in relevant part: "In all criminal prosecutions, the accused shall enjoy the right to…have the Assistance of Counsel for his defense."

The formative case on ineffectiveness of counsel remains *Strickland v. Washington*.[7]  Recently, the United States Court of Appeals for the Third Circuit explained the two-fold standard as follows:

> That standard requires a petitioner to show counsel was "deficient," meaning "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed to the defendant by the Sixth Amendment." A petitioner must also show that "the deficient performance prejudiced the defense," which "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial." This is an exacting standard, reflecting the reluctance of the courts to second-guess strategic decisions made by counsel.[8]

Accordingly, Brown must demonstrate both that counsel's representation fell below an objective standard of reasonableness, and that but for counsel's unprofessional errors, the result of the proceedings would have been different.

---

[7]  466 U.S. 668 (1984).

[8]  *Workman*, 908 F.3d at (3d Cir. 2018).

With this preliminary guidance in mind, I now turn to Brown's four arguments in support of his petition for writ of habeas corpus.

  **A. Ground One: "Counsel was ineffective regarding plea negotiations and with regards to the plea agreement"[9]**

Brown first argues that counsel was ineffective regarding plea negotiations. Brown was in the the first wave of defendants to plead guilty in this conspiracy. By doing so, he received a favorable plea agreement given his admission that he was responsible for at least 700, but less than 1,000, grams of heroin. As events transpired, this was a far better plea than some of his co-conspirators received. Many co-defendants waited until the eve of trial to accept a plea agreement and then plead to conspiring to distribute 1,000 grams or more of heroin which carries higher fines and length of imprisonment.

Additionally, Brown's counsel was able to effectively negotiate the withdrawal of the information filed by the Government pursuant to 21 U.S.C. § 851 in exchange for his plea of guilty. Had Brown's counsel not been able to reach that agreement with the Government, Brown's mandatory minimum term of imprisonment would have doubled to ten years.

Moreover, it is my observation that in the course of the last few years, the United States Attorney's Office has been negotiating pleas with direct appellate

---

[9] Petition, ECF No. 955 at 4.

- 4 -

waivers with increasing regularity.  Brown's counsel was able to competently negotiate a conditional appellate wavier, as opposed to the more frequently offered complete direct appeal waiver, with the condition that the direct appeal right was only waived if the Court imposed a sentence of 235 months or less.

Accordingly, because I find that counsel's performance did not fall below an objective standard of reasonableness, I conclude that counsel was not ineffective here.   Brown's counsel effectively negotiated a favorable plea for his client, whether Brown fully grasps that, or not.

> **B.      Ground Two: "The definition of a felony drug offense is unconstitutionally vague for the 851 enhancement.  Counsel was ineffective for failing to attack the enhancement."[10]**

Second, Brown argues that the "enhancement under § 851 is unconstitutionally vague."  Title 21 U.S.C. § 851 is not an "enhancement" under the guidelines.  Section 851 is a statutory requirement that any "person who stands convicted of an offense under this part" who stands to be "sentenced to increased punishment by reason of one or more prior convictions" must be put on notice by the  "United States attorney" who is required to "file[] an information with the court (and serves a copy of such information on the person or counsel for the person) stating in writing the previous convictions to be relied upon."

---

[10]   Petition, ECF No. 955 at 5.

In this matter, the Government filed an information pursuant to Section 851 to put Brown on notice that he was subject to increased penalties because of his four prior convictions, namely:

> 1. Philadelphia Court of Common Pleas, Criminal Case No. 1108201-1998; manufacture, delivery, and possession with intent to deliver controlled substances; guilty plea entered; sentence of three (3) to 23 months in prison and two (2) years' probation imposed on August 29, 2001.
>
> 2. Philadelphia Municipal Court, Criminal Case no. 0727631-2001; possession with intent to deliver non-mandatory amount of drugs; adjudged guilty; sentence of two (2) years' probation imposed on October 5, 2001.
>
> 3. Philadelphia Court of Common Pleas, Criminal Case no. 1000321-1998; manufacture, delivery, possession with intent to deliver controlled substances; guilty plea; three (3) to 23 months in prison and two (2) years' probation imposed on August 29, 2001.
>
> 4. Philadelphia Court of Common Pleas, Criminal Case no. 0003789-2010; manufacture, delivery, possession with intent to deliver controlled substances; guilty plea; sentence of 11 months and 15 days to 23 months in prison and four (4) years' probation imposed on December 15, 2010.[11]

Counsel's failure to object to the existence of the 851 information did not fall below an objective standard of reasonableness. As discussed above in Section A, counsel was successful in negotiating the withdrawal of the 851 information in exchange for Brown's guilty plea.

---

[11] 851 Information, ECF No. 216 at 2-3.

### C. Ground Three: "Brown's plea is not knowing, intelligent, and voluntary."[12]

In a rather circular argument, Brown argues next that his plea was not made knowingly, voluntarily, or intelligently because he alleges that the § 851 information was invalid. As discussed in section B above, the 851 information was valid. Moreover, I thoroughly questioned Brown during his change of plea hearing, to ensure the proper entry of a guilty plea.

The February 16, 2017 change of plea hearing was conducted in open court with Brown appearing in person in accordance with Federal Rule of Criminal Procedure 11. I am satisfied that Brown understood the factual basis underlying the plea, his right to persist in a plea of not guilty, his right to a representation at a jury trial, the right to confront witnesses against him, the nature of the charges, the terms of imprisonment, the terms of the plea agreements, and that the plea was voluntary. That relevant portions of my colloquy with Brown are reproduced here:

> THE COURT: Mr. Brown, before I can accept your plea of guilty in the charge that has been brought against you in this case, it is necessary for me to establish for the record that you fully and completely understand your rights under the law, and that you understand the consequences of a guilty plea. Do you understand that, sir?
>
> THE DEFENDANT: Yes, Your Honor.
>
> *****

---

[12] Petition, ECF No. 955 at 6.

THE COURT: Mr. Brown, have you received a copy of the indictment pending against you; that is to say, the written charges that have been made against you in this case?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Have you disused those charges and the case in general with Mr. Petcavage?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Are you fully satisfied with the representation you have received to date from your counsel?

THE DEFENDANT: Yes.

*****

THE COURT: Very good. The Court finds Mr. Brown's present thinking, understanding and judgment are unimpaired, that he understands the nature of today's proceeding, and he's, therefore, competent to enter a guilty plea. That said, Mr. Brown, you are entitled to a jury trial in this matter, in which you, through your counsel, Mr. Petcavage, would select a jury consisting of 12 persons. At the trial, and during any subsequent proceedings, the Government of the United States would have the burden of proving each and every element of the crime charged against you beyond a reasonable doubt. You are presumed innocent until that burden is met. At the trial, you would again have the right, through your counsel, to cross examine any witnesses the Government would present. You, in turn, would have the right to subpoena witnesses and evidence on your own behalf, although you are not required to do so. And should you decide not to testify or put on any evidence, that decision cannot be used against you. Any finding of guilt would have to be unanimous; that is to say, all 12 jurors would have to agree. If you give up your right to a jury trial, you also give up your right to present any defenses you may have or the right to appeal any pretrial motions. Having said that to you, sir, do you understand your right to a jury trial?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand further that you have a right to plead not guilty and to proceed with a jury trial in this matter?

THE DEFENDANT: Yes, I do.

THE COURT: Is it, nevertheless, your desire now to give up your right to a jury trial and to enter a plea of guilty to count one of the second superseding indictment?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Mr. Brown, count one of the second superseding indictment charges that from in or around January of 2011 and continuing through the date of the indictment, in Lycoming, Northumberland and Columbia counties, all within the Middle District of Pennsylvania, and elsewhere, you did knowingly and intentionally combine, conspire, confederate and agree with several indicted co-conspirators and other persons, known and unknown, to the grand jury to distribute and possess with intent to distribute 1,000 grams or more of heroin, in violation of Title 21 of the United States Code at Section 846. At this time, I would ask Mr. Rocktashel on behalf of the United States Attorney's Office, to place on the record what facts the Government would present in support of this charge. Mr. Rocktashel, go right ahead.

MR. ROCKTASHEL: Thank you, Your Honor. Troy Brown was a member of a drug trafficking network that operated along the Interstate 80 corridor, from the Williamsport area to Bloomsburg and vicinity and down to Philadelphia and South Jersey. Brown, Kalif English, Sharonda Walker, Keith Harding, Eric Harding, Shakeen Taylor, and conspirators known to the grand jury, managed the other co-defendants in crews that used seven separate cell phones to supply drug customers with heroin. The hallmark of this organization was its ability to quickly respond to customers' heroin orders, and then deploy throughout the region to deliver heroin to numerous customers at motels, shopping malls and commercial locations in and around Williamsport, Bloomsburg and other communities along Interstate 80. When the crews sold out their heroin supplies, they stopped responding to customer calls to the work phones, traveled to Philadelphia for

additional supplies in Philadelphia, and then a few days later, on the return trip to central Pennsylvania, sent out mass text messages to drug customers that new supplies of heroin were available. Members of this organization used at least seven prepaid mobile work phones, or traps, to answer customer calls for heroin and arrange meetings to deliver the drug at designated locations. Often the work phones were put in forwarding mode to the other phones to maintain continuous service, if one of the persons holding a particular work phone was in Philadelphia, or out of the area, or if a phone was seized by police. Although on a number of occasions, the work phones were seized during traffic stops and arrests, customer traffic to the phone numbers never waned. The conspirators simply obtained other prepaid cell phones and transferred the widely-known work phone numbers to the new devices when they initiated service on the new phones. A core set of about four cell phone numbers, well known to a loyal network of drug customers, represented the digital business platform for this wide-ranging drug trafficking organization. During the period of the conspiracy, from in or around May 2013 through his arrest on May 23, 2015, Troy Brown sold heroin with Kalif English and Sharonda Walker using work cell phones managed and operated by Troy Brown, English, Walker, and other conspirators known to the grand jury. Heroin customers called the cell phones and were directed by English, Walker, Brown and other conspirators to various meeting locations in the Williamsport region. Brown drove to various businesses on the Golden Strip in Loyalsock Township, Lycoming Creek Road and Maynard Street, and other locations in Northumberland Borough, Point Township, and truck stops off Interstate 80 in Limestone Township, where he met heroin customers who had called the work phone. He received money from the customers in exchange for heroin. Brown also met heroin customers and delivered heroin at such places as the Buffalo Wild Wings, the K-Mart, and Taco Bell in Loyalsock Township, where he and the other conspirators would supply heroin to 30 or more customers, arriving by car, within a 15 minute period. Troy Brown, Kalif English, Sharonda Walker and other members of the conspiracy received firearms from heroin customers, and paid them heroin or cash for the guns. As charged in count four of the second superseding indictment, on May 23, 2015, Brown and co-defendant Shawn Hayman were arrested by the Pennsylvania State Police following a citizen's report that the two were observed making hand-to-hand exchanges of drugs to various individuals from a gold Pontiac operated in the area of the K-Mart plaza

in Loyalsock Township. A PSP trooper conducted a traffic stop of the vehicle. Brown, the driver, had a suspended operator's license and was asked to step out of the vehicle. After being patted down for weapons, Brown consented to a search of the vehicle. Troopers asked Hayman, the front seat passenger, to step out of the vehicle, and he was patted down for weapons. During the search of the passenger compartment, a trooper found an eyeglass case containing 19 Suboxone patches within the center console. The troopers then took Brown and Hayman into custody for possession of a controlled substance. Prior to transporting them to the station, the troopers searched Brown and Hayman incident to the arrest. Hayman had $375 in cash in his front pants pocket, and Brown had $541 in cash on his person. Once at the station, the troopers advised Hayman that he was going to be strip searched prior to being transported to prison. Hayman told the trooper that he had drugs in his left sneaker. Within the left sneaker the trooper found a clear sandwich baggy, containing eight bundles of packaged heroin, and one separate baggy containing a total of 110 light blue bags of heroin. During a conversation with Brown, he reported that he also had heroin in his left sneaker. Inside the sneaker, the trooper found a clear plastic sandwich bag, tied in a knot, which contained four separately-wrapped bundles of packaged heroin, plus one separate baggy, for a total of 56 light blue bags of heroin. Notably, the telephone number for co-conspirator and fellow manager, Keith Harding, was in the contact list of one of the phones recovered from Brown and Hayman during this traffic stop. Prior to Brown's arrest in May of 2015, drug customers and dealers in Northumberland and Union Counties regularly purchased heroin from Brown. They ordered heroin from Brown on dedicated customer cell phones. Brown and other co-conspirators sent by him met the drug purchasers at commercial locations at Faxon, Lycoming Creek Road, East Third Street, Maynard Street and at a truck stop off Interstate 80 nearby, in Limestone Township. As charged in count 13, Brown obtained a .45 caliber pistol and ammunition during the course of the drug trafficking conspiracy. Brown admitted in an interview with investigators that he received the .45 caliber pistol from a heroin customer. The .45 caliber pistol was recovered by the police officers and the FBI during the consent search after of a residence connected with Brown. According to Brown's heroin customers, co-defendant Corey Hughes and other conspirators responded to customer requests for heroin following calls to the work phones operated by Troy Brown. On April 6, 2015, police in Northumberland County recovered 174 bags

of heroin from a heroin dealer and customers during a traffic stop. One of the individuals received the 174 bags of heroin from Brown as charged in count three of the indictment. To order heroin, the individual used a cell phone number to contact Brown and co-defendant Corey Hughes, a number that later was intercepted, pursuant to Title III, and referred to in documents in that case as target phone number two. Significantly, target phone number two was eventually forwarded to target phone number one, a work phone used by Brown's fellow managers, Kalif English and Sharonda Walker. Troy Brown rented an apartment at 2000 Mill Lane in Old Lycoming Township. According to rental records, Troy Brown rented apartment number five there, and his daughter Tyshera. Brown rented apartment number 12, which she shared with co-defendant, Sharonda Walker. Troy and Tyshera Brown both paid about $1,500 per month in rent and expenses and made their payments in cash. During a consent search of Tyshera Brown's apartment number 12, June 13, 2015, police and FBI investigators recovered $1,220 in U.S. currency, bags of black rubber bands commonly used to bundle heroin bags, 11 cardboard boxes containing blue wax bags similar to the ones used to package the heroin sold by Troy Brown, Sharonda Walker, and Kalif English, and records containing photos and the names of co-defendants Donald Avery, Tayza Brown, and Sharonda Walker. As a result of his participation in the conspiracy to distribute controlled substances, Troy Brown was responsible for the distribution of more than 700, but less than 1,000 grams of heroin. That's a summary of the evidence against this defendant, Your Honor.

THE COURT: All right. Thank you, Mr. Rocktashel. Mr. Brown, do you fully admit to all of those facts as recited to me momentarily by the Assistant United States Attorney?

THE DEFENDANT: Yes, Your Honor.

THE COURT: It's the Court's understanding that there is a plea agreement in this matter. Mr. Brown, did your attorney, Mr. Petcavage, fully explain the written plea
agreement to you?

THE DEFENDANT: Yes, he did.

THE COURT: Did you voluntarily sign it?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you believe you have had sufficient time to talk this plea agreement over with Mr. Petcavage?

THE DEFENDANT: Yes, Your Honor.

THE COURT: I'll now ask Mr. Rocktashel to summarize the terms of the plea. Mr. Rocktashel, go right ahead.

MR. ROCKTASHEL: Thank you, Your Honor. Under the terms of the plea agreement, the defendant has agreed to plead guilty to count one of the second superseding indictment, charging him with conspiracy to distribute controlled substances. Based upon the stipulated drug quantities stated in the agreement, the maximum penalty for that offense is imprisonment for a period of 40 years, a fine of $5 million, a maximum term of supervised release up to life, served at the end of any prison term, various costs, and a special assessment of $100. At the time the guilty plea is entered, the defendant shall admit to the Court that he is, in fact, guilty of the offense charged in that count. At, or before, the time of sentencing, the United States will move to withdraw the information filed pursuant to 21 U.S. Code, Section 851, to establish a prior conviction of a felony drug offense. After sentencing, the United States will move for dismissal of any remaining counts. The defendant also acknowledges in the plea agreement, that based upon the stipulated drug quantity, count one carries a mandatory minimum period of imprisonment of five years. In addition, he's also acknowledged that the Court must impose at least a four year term of supervised release, in addition to any term of imprisonment. In exchange for the defendant's plea of guilty, the United States has agreed not to bring any other criminal charges against the defendant, with the exception of any criminal tax charges that may or may not apply in this case. The parties have also come to terms in the agreement with respect to the application of the sentencing guidelines. The United States, first of all, has agreed to recommend a three-level reduction in offense level for acceptance of responsibility if the defendant can demonstrate that. In addition, the parties have agreed that the defendant was responsible for the distribution of at least 700 grams of heroin but less than 1,000 grams of

heroin.  Second, that because he was at least 18 at the time he committed the felony controlled substance offense in this case, and has at least two prior drug felonies of either of a crime of violence or a controlled substance offense, two prior felony convictions of either a crime of violence or a controlled substance offense, he qualifies as a career offender under the guidelines.  Third, based on the stipulated drug quantity, the offense statutory maximum is 40 years, the base offense level is 34, and the criminal history category is six, under the guidelines.  And finally, with a three-level adjustment for acceptance of responsibility, the total offense level is 31, the criminal history is six, and the guideline imprisonment range is 188 to 235 months.  The defendant and the United States both acknowledge that none of the stipulations contained in the plea agreement concerning the guidelines and none of the recommendations are binding on the report or the probation office and that those -- the Court and the probation office are free to come up with a different calculation. The defendant has also acknowledged that the United States may provide the probation office and the Court all information it has concerning this conduct, and that if – and that information includes the Government takes the position the defendant was a leader within the meaning of the guidelines, and possessed a weapon within the meaning of the guidelines.  At the time of sentencing, the United States will make a specific recommendation within the applicable guideline range and reserves the right to recommend the maximum sentence within that range. The defendant, in the plea agreement, agrees not to seek a variance from the applicable guideline range below 144 months imprisonment, and if he does so, that would be considered a breach of the plea agreement.  The defendant has also, in the plea agreement, agreed to forfeit any interest he has in the property identified in the forfeiture allegations of the second superseding indictment, and the United States has agreed to seek no further forfeiture of property as a result of that position he takes in the plea agreement. Nothing in the plea agreement, as indicated, will bind the Court. The Court is not a party to the agreement and not a party to any of the stipulations or recommendations made by the parties. The Court is, therefore, free to impose any lawful sentence up to the statutory maximum penalties that I've described.  In addition, as the defendant acknowledges in the plea agreement, if the Court imposes a sentence with which the defendant is dissatisfied or doesn't like for any reason or thinks it's too high, that would not be a basis for the defendant to void or get out of the plea agreement.  Finally, there's a conditional

appeal waiver in the plea agreement, whereby the defendant has acknowledged the right to take a direct appeal from the judgement of conviction and sentence, and acknowledging that, he has agreed to knowingly waive that right to appeal on the express condition that the Court imposes an imprisonment term of 235 months or below, including a term of supervised release as required. In the event the Court imposes a sentence of imprisonment greater than 235 months, the defendant retains the right to appeal the conviction and sentence. And that's a summary of the main points of the plea agreement, Your Honor.

THE COURT: All right. Mr. Rocktashel, thank you very much. Mr. Petcavage, is that an accurate summary of the terms of the plea agreement?

MR. PETCAVAGE: It is, Your Honor.

THE COURT: Thank you. Mr. Brown, do you agree with what your attorney, Mr. Petcavage, has indicated to me that Mr. Rocktashel has accurately summarized the terms of your plea agreement with the Government of the United States?

THE DEFENDANT: I do, Your Honor.

THE COURT: Other than those terms, sir, did anyone promise or offer you anything else in order to get you to plead guilty?

THE DEFENDANT: No, Your Honor.

THE COURT: Have there been any threats made against you or against any member of your family that caused you or forced you to sign the plea agreement?

THE DEFENDANT: No, Your Honor.

THE COURT: Are you doing this then of your own free will?

THE DEFENDANT: Yes, I am, Your Honor.

THE COURT: Do you understand, sir, that no one can guarantee you what sentence you will receive from me?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand further that the terms of the plea agreement are simply recommendations to the Court, that I can reject their recommendations without permitting you to withdraw your plea of guilty, and impose a sentence which is more severe than the sentence that you anticipate?

THE DEFENDANT: Yes, Your Honor.

*****

THE COURT: Do you understand that based upon the stipulated drug quantity contained within the plea agreement, the statutory maximum penalty for the violation prescribed in count one is 40 years imprisonment, a fine of $5 million, a lifetime term of supervised release to be determined by the Court, which shall be served at the conclusion of, and in addition to, any term of imprisonment, as well as the costs of prosecution, imprisonment, probation and supervised release ordered, denial of certain federal benefits, together with a $100 assessment?

THE DEFENDANT: Yes, I do, Your Honor.

THE COURT: Do you understand further that based upon the stipulated drug quantity stated within the plea agreement, count one carries a mandatory minimum period of imprisonment of five years?

THE DEFENDANT: Yes, I do, Your Honor.

*****

THE COURT: Mr. Brown, do you understand that there are sentencing guidelines that this Court must consider in passing sentence on you?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Have you and Mr. Petcavage talked about the sentencing guidelines that might apply to your case?

THE DEFENDANT: Yes, he did, Your Honor.

THE COURT: And has he estimated for you what your guideline sentence might be?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Mr. Petcavage, based upon what you know today, what did you estimate is the applicable guideline range?

MR. PETCAVAGE: It would be 188 to -- sorry, I missed it. What was the amount?

THE COURT: That's 188 to 235 months.

MR. PETCAVAGE: Yes, 235. Correct. I'm sorry.

THE COURT: Mr. Rocktashel, you referenced that before. Do you agree with that estimated range?

MR. ROCKTASHEL: Yes, Your Honor. That's what is stipulated to in the plea agreement.

THE COURT: Mr. Brown, a prior conviction can affect your guideline sentencing range. Do you understand that, sir?

THE DEFENDANT: Yes, sir.

*****

THE COURT: Mr. Brown, with all of the information that I have reviewed with you thus far this afternoon, is it still your desire to plead guilty?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Are you pleading guilty of your own free will because you are guilty?

THE DEFENDANT: Correct, Your Honor.

> THE COURT: Mr. Brown, do you have any questions now of me regarding anything that appears in the body of your plea agreement?
>
> THE DEFENDANT: No, I don't. I understand.
>
> THE COURT: Thank you. Mr. Brown, based upon all of the information that I have provided to you today, including, but not limited to, your right to a trial by a jury of your peers, do you now plead guilty?
>
> THE DEFENDANT: Yes, I do, Your Honor.
>
> THE COURT: Very well. The Court makes the following findings; that this defendant Troy Ryehee Brown, is fully alert, competent, and capable of entering an informed plea; the plea is a knowing and a voluntary plea, supported by an independent bases in fact, containing each of the essential elements of the offense pled to. The defendant's plea of guilty is, therefore, accepted. He is now adjudged guilty of this offense. For the record, the Court notes that the guilty plea form has been signed by Mr. Brown, and is now accepted by the Court.

I conclude that the colloquy set forth in detail above was thorough and complete. I also conclude that Brown's guilty plea was made knowingly, voluntarily, and intelligently. As such, there is no basis here on which to find an ineffective assistance of counsel.

### D. Ground Four: "Brown is not a career offender. Counsel failed to object to the enhancement."[13]

Finally, Brown asserts that he should not have been sentenced as a career offender. However, he does not identify which offense he believes did not qualify

---

[13] Petition, ECF No. 955 at 8.

United States Sentencing Guideline 4B1.1 that defines a "career offender" as follows:

> (a) A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

Brown certainly meets the definition of a career offender under the guidelines. He was well past eighteen years old at the time he committed the conspiracy charged; in fact, he was just shy of his fortieth birthday when he was arrested. The instant offenses charged were felony controlled substances offenses; specifically, Brown plead guilty to conspiracy to distribute heroin in violation of 21 U.S.C. § 846. Last, as discussed above, Brown has four prior convictions for delivery and possession with intent to deliver controlled substances.

Brown now asserts that counsel was ineffective for failing to argue that the four Pennsylvania offenses did not qualify as predicate offenses under the Guidelines pursuant to *Mathias v. United States*.[14] However, that argument would have been unavailing at the time of sentencing (had it been advanced) and remains unavailing today. The Third Circuit recently ruled in *United States v. Glass*[15] that

---

[14] 136 S. Ct. 22443 (2016).

[15] 904 F.3d 319 (3d Cir. 2018).

the Pennsylvania offense of delivery and possession with intent to deliver drugs in violation of 35 Pa.C.S.A. § 75-113(a)(30) meets the definition of "controlled substance offense" in the career offender guideline.[16] Accordingly, Brown was correctly designated a career offender, and his counsel's performance did not fall below an objective standard of reasonableness for failing to argue otherwise.

### E. No Certificate of Appealability Shall Issue.

Title 28 U.S.C. § 2253 states, in relevant part, "certificate of appealability may issue [] only if the applicant has made a substantial showing of the denial of a constitutional right." Pursuant to Rule 11 of the Rules Governing 2255 proceedings, I decline to issue a certificate of appealability.

### III. CONCLUSION

The Petition for Writ of Habeas Corpus will be dismissed by separate Order.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge

---

[16] *Id.* at 324.